## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:12-CR-364 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | |
| WILLIAM MANGUM, | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.:**

This matter is before the Court on a Report and Recommendation of the Magistrate Judge recommending the Court find that Defendant violated the terms and conditions of his supervised release.  (ECF #325.)  The Report and Recommendation follows revocation proceedings considering a Superseding Violation Report that alleges five violations: Illicit Drug Use related to submission of nine urine specimens which tested positive for cocaine, with the latest occurring on August 30, 2017, Failure to Submit to Drug Testing, Failure to Comply with Treatment, and two state law violations.  *Id.*  The drug use, testing and treatment violations had been previously reported to the Court in the original Violation Report.  *Id.* and ECF #286.  The new state law offenses include charges for OVI, Forgery and Identity Fraud stemming from a December 21, 2019 arrest and a separate July 14, 2023 indictment for three counts of Identity Fraud, Grand Theft and Theft.  (ECF # 325.)

During the proceedings, the Government dismissed eight of the nine illicit drug use violations, pursuing only the August 30, 2017 violation.  (See Minutes Entry dated 1/4/24.)  It

1

also dismissed the drug testing and drug treatment violations. *Id.* Defendant admitted to the illicit drug use violation and only to the new law offenses to which he pled guilty in state court. *Id.* The United States Pretrial Services and Probation Officer agreed to file a new Superseding Violation Report and did so later that day. *Id.* and ECF #326. The January 4, 2024 Superseding Violation Report contains only violations for Illicit Drug Use and the new state law offenses. (ECF #326.)

On January 8, 2024, the Defendant filed an Objection to the Report and Recommendation and Motion to Dismiss asserting the Court does not have jurisdiction to revoke Defendant's supervised release based upon the new state law violations. (ECF #328.) Due to the dismissal of the drug testing and treatment violations, Defendant's Objection/Motion refers to the new state law offenses as Violations 2 and 3. The Government opposed Defendant's Motion (ECF # 333) and Defendant has filed his Reply Brief in Support. (ECF # 334.) The parties' arguments regarding jurisdiction are inextricably tied to the timeline of events and Defendant's particular conduct.

## BACKGROUND FACTS

Defendant's four-year period of supervised release began on October 31, 2016, when he was released from the custody of the Bureau of Prisons. Accordingly, his period of supervised release was set to expire on October 31, 2020. (See ECF #333-1, Stipulation).

On June 6, 2017, the Court ordered the issuance of a summons to Defendant on a supervised release Violation Report filed by the United States Probation Officer. (ECF # 276). On June 27, 2017, the Court held a hearing on the Violation Report. The Court found that Defendant violated the terms of his supervised release but delayed sentencing, leaving all previously imposed conditions in effect. (ECF # 277).

On July 28, 2017, the Court ordered the issuance of a new summons regarding a new Violation Report.  (ECF #281).  The Court held a hearing on the pending violations on August 30, 2017.  At the hearing, Defendant admitted the additional violations and the Court found that he had committed the violations.  At that time the Court offered Defendant a choice: immediate revocation of his supervised release and a potential sentence of seven to eleven months due to repeated cocaine use violations, failure to submit to drug testing and failure to comply with drug treatment *or* modification of his release conditions to include random drug testing with the warning that any further drug use violation would result in a three-year statutory maximum sentence.  (ECF #329, Transcript.)  Defendant agreed to "bet on himself" and rather than revoke Defendant's supervised release the Court continued Defendant on supervision with modified terms to include random drug testing as directed by the Probation Officer.  (ECF #284, 285.)

On August 30, 2017, after the violation hearing, Defendant submitted to urinalysis that tested positive for cocaine.  (ECF #288, Violation Report.)  On September 13, 2017, the Probation Officer submitted a new Violation Report based on the positive urinalysis.  (ECF #286.)  The violation report included three violations:  Violation 1 alleged illicit drug use on multiple occasions; Violation 2 alleged Failure to Submit to Drug Testing; and Violation 3 alleged Failure to Comply with Treatment.  *Id.*  On September 14, 2017, the Court issued a warrant for Mangum's arrest.  (ECF #289.).  After his August 30, 2017 positive urinalysis test, Defendant stopped reporting to his Probation Officer.  (ECF #319, Superseding Violation Report.)

At nearly 2 a.m. on December 21, 2019, Defendant was arrested by the Ohio State Highway Patrol ("OSHP") for Operating a Vehicle under the Influence of alcohol.  At the of time his arrest, Mangum provided his identity as L.W. to the troopers.  He was taken to the

3

Bratenahl Police Department and released. Because Mangum provided a false identity, troopers were unaware of the pending arrest warrant from the Northern District of Ohio. On January 22, 2020, the OHSP learned that the real L.W. had complained that his identity was stolen and claimed that he was not the person who had been arrested for OVI in Ohio on December 21, 2019. The Ohio State Highway Patrol investigated further and determined that L.W. was a resident of Georgia and that Defendant was posing as L.W. (See ECF #333-2, OSHP Report.)

After discovering Defendant's true identity, Defendant was indicted on December 18, 2020 in Cuyahoga County and charged with Identity Fraud, Forgery and two counts of Driving Under the Influence related to the use of L.W's identity and the OVI arrest. After Defendant failed to appear for arraignment, a Capias warrant was issued for his arrest. This conduct forms the basis of Violation 2.

Defendant was not arrested until June 30, 2023. On December 20, 2023, Defendant pled guilty to Identity Fraud for using L.W.'s identity and Driving Under the Influence. (ECF #333-1.)

On August 3, 2020, Mangum obtained a lease and moved into an apartment in Cleveland using the name and identifiers for D.F., without D.F.'s permission. Mangum failed to pay rent for the apartment. (See ECF #333-5, Apartment Financial Statement; ECF #333-6, Cleveland Police Department Report). On September 17, 2020, Mangum committed a traffic violation in Cleveland. He provided the officer with a driver's license in the name of D.F. The real D.F. was a resident of Florida. D.F. received a notice stating that there was a warrant out for his arrest because he failed to appear at a court proceeding for the traffic violation. Officers investigated and determined that Defendant had provided a false identity to the officers. Again, because

4

Defendant provided a false identity, the officers did not learn that there was a warrant for his arrest from the Northern District of Ohio. *Id.*

Defendant was indicted on July 14, 2023, in Cuyahoga County and charged with three counts of Identity Fraud, Grand Theft and Theft related to the use of D.F.'s stolen identity. On December 20, 2023, Defendant pled guilty to one count of Identity Fraud related to using D.F.'s stolen identity in the September 17, 2020 traffic stop and to an amended charge of Attempted Grand Theft related to the use of D.F.'s stolen identity to obtain the apartment lease. (ECF #333-1, Stipulation; ECF #333-7, Case No. CR-23-682675-A Indictment; ECF #333-8, Case No. CR-23-682675-A Journal Entry). This conduct forms the basis of Violation 3.

## LAW AND ARGUMENT

The parties agree that the Court is within its jurisdiction to find Defendant has violated the terms of his supervised release due to his positive drug test for cocaine on August 30, 2017. They further agree that the Court may fashion a sentence for the drug use violation that considers Defendant's new state law offense conduct. The parties' agreement on this point could be construed as grounds to dismiss Defendant's motion as moot, but the Court cannot dispose of this matter on that basis because it would run afoul of the Court's obligation to review *de novo* the portions of a Report and Recommendation to which timely objection is made. The court may accept, reject, or modify the recommended disposition. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b). Here, the Report and Recommendation found that "Defendant knowingly and voluntarily admitted to the violations set forth in the Violation Report," including the new state law offenses, and recommended the Court find that Defendant had violated the terms and conditions of his supervised release due to those violations. (ECF #325.)

Defendant timely objected, arguing the Court lacks jurisdiction to find the new state law offenses violated the terms of his supervised release. Defendant's objection is very specific and

5

appears to be a matter of first impression in this Circuit. As an initial matter, Defendant concedes that statute extends the Court's jurisdiction to consider supervised release violations beyond expiration of the supervised release term provided the alleged violations occurred during the supervised release term and specific statutory conditions are met, citing 18 U.S.C. § 3583(i). Defendant contends, however, that the Court's jurisdiction to consider pre-supervised release expiration conduct in a post-expiration supervised release revocation proceeding is conditioned upon whether the alleged violation(s) were the subject of a warrant or summons issued during the supervised release period. (ECF #334 at 5.)

The Government opposes this interpretation, arguing that the plain language of the statute "authorizes a district court to consider all violations committed prior to the expiration of a term of supervised release so long as a warrant or summons is filed prior to the expiration of the term, without limiting the [C]ourt's authority to just the specific violation contained in the warrant or summons." (ECF #333 at 12.)

Further, anticipating the Government's response, Defendant argues in what appears to be another issue of first impression, to wit, that there is no judicially created "fugitive tolling" doctrine recognized by the Sixth Circuit and that this Court should follow other jurisdictions and find, despite Defendant's seemingly persistent criminal efforts to evade detection by law enforcement, there is no "fugitive tolling" doctrine which equitably extends Defendant's supervised release term and confers jurisdiction upon the Court to consider whether the new state law offenses are violations of the terms of Defendant's supervised release. (ECF #328 at 2.)

Predictably, the Government urges the Court to find "fugitive tolling" equitably extends a period of supervised release during the time a defendant evades supervision such that it provides

6

the Court jurisdiction to adjudicate violations occurring during and beyond the natural expiration of a period of supervised release. (ECF #333 at 13-19.)

For the following reasons, the Court finds that it has jurisdiction over Violations 2 and 3, **ADOPTS** the Report and Recommendation and **ACCEPTS** the recommended disposition. The Court finds Defendant has violated the terms and conditions of his supervised release by using illicit drugs and violating state law.

> **A. Statutory interpretation demands a finding that judicially created "fugitive tolling" which equitably extends a defendant's term of supervised release is impermissible and cannot serve as a basis for jurisdiction over Violations 2 and 3.**

Defendant identifies a Circuit split on the issue of whether a Defendant's term of supervised release is "tolled" when a Defendant had absconded from supervision. (ECF #328.) The Sixth Circuit has yet to directly address this issue.

The First Circuit and the Eleventh Circuit, most recently, have held that there is no judicially created "fugitive tolling" of supervised release. See *United States v. Hernandez-Ferrer,* 599 F.3d 63 (1st Cir. 2010) and *United States v. Talley*, 83 F.4th 1296 (11th Cir. 2023), respectively. The First Circuit, in part, relied upon a Sixth Circuit case, *United States v. Ossa-Gallegos*, 491 F.3d 537, 543 (6th Cir.2007) (en banc)), which decided a similar, but distinguishable issue and found that there is no statutory basis for a "tolling" of supervised release outside of a specific statutorily authorized condition. Defendant urges the Court to adopt the logic of *Ossa-Gallegos* and find that tolling can only occur when authorized by statute, and there is no such authorizing statute.

The Government, conversely, urges the Court to follow the Second, Third, Fourth, and Ninth Circuits which found that fugitive tolling applies to supervised release terms. See *United States v. Barinas,* 865 F.3d 99, 109 (2d Cir. 2017), *United States v. Island,* 916 F.3d 249, 254 (3d

7

Cir. 2019), *United States v. Buchanan,* 638 F.3d 448, 455 (4th Cir. 2011) and *United States v. Murguia-Oliveros*, 421 F.3d 951, 953-55 (9th Cir. 2005), respectively. The Circuits that have applied fugitive tolling have based their arguments primarily on the concept that "no man may take advantage of his own wrong." See *Barinas,* 865 F.3d 99, 107 (2d Cir. 2017) (citations omitted). The Government contends the language in *Ossa-Gallegos* regarding tolling is dicta and that "[t]he entire structure of the supervised release system is threatened if defendants can abscond from supervision and have the time they spend as fugitives count against their period of supervised release." (ECF #325??.) The Court finds this concern hyperbolic for reasons more fully explained below and that following the logic of *Ossa-Gallegos,* statutory interpretation requires a finding that judicially created "fugitive tolling" is impermissible.

*Ossa-Gallegos* is easily distinguishable and does not control this matter because it concerned itself with the "narrow question of whether the practice of tolling a period of supervised release for a deported offender is authorized by the sentencing statutes." *Ossa-Gallegos* at 538. Defendant is not a deported offender.

However, in order to reach its decision, the Sixth Circuit undertook a thorough statutory analysis of 18 U.S.C. § 3583, which also controls the decision in this matter, and found that "tolling is inconsistent with the overall statutory scheme providing for supervised release."[1] *Ossa-Gallegos*, 491 F.3d 537, 545 (6th Cir. 2007). The Court agrees and finds that statutory construction requires a finding that judicially created "fugitive tolling" is impermissible.

The Court is persuaded by the reasoning and conclusion of the First Circuit:

---

[1] The Court acknowledges a statute provides for one specific condition which tolls a defendant's term of supervised release: imprisonment in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days. *See* 18 U.S.C. § 3624(e).

8

> To begin, the statutory provisions touching upon supervised release neither expressly require nor expressly permit tolling during the interval when an offender is in fugitive status. The only tolling provision that Congress saw fit to enact is contained in 18 U.S.C. § 3624(e), which tolls the running of a term of supervised release during any period in which an offender is imprisoned for thirty days or more in connection with a different crime. The absence of an express tolling provision for fugitive status, coupled with the presence of an express tolling provision that encompasses other circumstances, is highly significant. See *Russello v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296, 78 L. Ed. 2d 17 (1983); *Trenkler v. United States,* 268 F.3d 16, 23 (1st Cir. 2001). The maxim "expressio unius est exclusio alterius" -- which translates roughly as "the expression of one thing is the exclusion of other things" -- is a venerable canon of statutory construction, see, e.g., *United States v. Reccko,* 151 F.3d 29, 34 (1st Cir. 1998), and that maxim is directly applicable here.
>
> We think that when Congress explicitly allows for tolling in a particular circumstance, there is a strong presumption that Congress did not intend to allow tolling in other circumstances. Here, the government has pointed to nothing that would suffice to rebut this strong presumption. We conclude, therefore, that the fact that Congress provided for tolling a period of supervised release only when an offender is imprisoned for a different crime is a decisive argument for the proposition that Congress did not intend to toll a period of supervised release for any other reason (including an offender's fugitive status). If Congress had wanted to authorize tolling when an offender absconds from supervision, we believe that it would have said so.
>
> If an offender absconds before the expiration of his supervised release term, he will not do so with impunity. After all, the statute allows for the passage of a period of time, following the expiration of a term of supervised release, which is "reasonably necessary" to adjudicate matters arising before expiration. 18 U.S.C. § 3583(i). This period would include the time that the offender, by his own contrivance, cannot be haled into court. Thus, as long as a warrant or summons issues before the expiration of the term, an offender who remains a fugitive will still be subject to the court's jurisdiction once located, and his conduct while a fugitive will be considered at sentencing. See infra Part II(D). It follows that a judicially contrived tolling mechanism is not necessary to deter offenders from absconding.

*United States v. Hernandez-Ferrer,* 599 F.3d 63, 67-69 (1st Cir. 2010). The Court is also persuaded that this conclusion comports with the interpretation advanced in *Ossa-Gallegos,* wherein the Sixth Circuit concluded, "if Congress had wanted to authorize tolling the period of supervised release while a defendant was outside the jurisdiction of the United States as the result of deportation, it would have expressly indicated this in the statute. Because Congress did

9

not so indicate, we conclude that it is impermissible under § 3583(d) for district courts to toll the period of supervised release on the basis of a defendant's absence from the United States." *Ossa-Gallegos,* 491 F.3d 537, 544 (6th Cir. 2007). The same reasoning applies here. Had Congress intended to authorize a tolling period of supervised release while a defendant was absconding, i.e., outside range of supervision, it would have expressly indicated in the statute. Because it did not there can be no cognizable doctrine of "fugitive tolling."

However, "fugitive tolling" is not necessary to find the Court has jurisdiction over Violations 2 and 3.

**B. 18 U.S.C. § 3583(i) authorizes the Court to adjudicate Violations 2 and 3 because its plain language does not limit the Court's jurisdiction to only matters raised in a summons or warrant issued during the supervised release period, but to all conduct which occurred during the period of supervision.**

The parties agree that statute controls resolution of this issue. The relevant statute reads:

> **Delayed revocation.** The power of the court to revoke a term of supervised release for violation of a condition of supervised release, and to order the defendant to serve a term of imprisonment and, subject to the limitations in subsection (h), a further term of supervised release, extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.

18 U.S.C.S. § 3583(i). Defendant directs the Court's attention to the portion of the statute which extends the Court's revocation jurisdiction beyond the expiration of the supervised release period, if, and only if, "before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation."[2]

---

[2] The Sixth Circuit has already observed § 3583(i) does not toll, but extends, the Court's authority:

> Section 3583(i) extends the time period in which the government may pursue a revocation proceeding against a defendant who allegedly violated the terms of his or her supervised release, but for whom the period of supervised release has expired. We do not view § 3583(i) as a tolling provision, because tolling requires

10

Defendant concedes that a warrant for the Defendant issued on September 14, 2017, prior to the expiration of his supervision, but only for illicit drug use and not for any conduct which is related to Violations 2 and 3. Because the warrant is for illicit drug use, Defendant argues and urges the Court to adopt the position that the language of § 3583(i) curtails the Court's jurisdiction to only matters which are alleged or related to the conduct described in the warrant, citing persuasive authority from the Second and Seventh Circuits, and a dissent from the Fifth Circuit, *United States v. Naranjo,* 259 F.3d 379 (5th Cir. 2001). (ECF #334.)

The Government cites the majority decision in *Naranjo* for the proposition that the plain language of § 3583(i) places no limitation on the Court's post-expiration jurisdiction to adjudicate violative conduct that occurred during the period of supervision so long as a warrant, any warrant, had issued during the period of supervision. The Government directs the Court's attention to the textual analysis provided in *Naranjo:*

> Under subsection (i), a district court can "revoke a term of supervised release for violation of a condition of supervised release ... if, before its expiration, a warrant or summons has been issued on the basis of an allegation of *such a violation*". 18 U.S.C. § 3583(i) (emphasis added). The statute does *not* require the pre-term-expiration-warrant to be based on an allegation concerning the *specific* violation for which revocation may be later, or ultimately, sought, however, because it uses the phrase "such *a* violation" (emphasis added), *not* "such violation".
>
> If "such violation" had been used, it would refer back to the phrase "violation of a condition of supervised release" employed earlier in subsection (i) and concerning the actual post-term-expiration revocation basis. The employed-phrase, "such *a* violation" (emphasis added), however, includes more than just the earlier employed "violation of a condition" permitting post-term-expiration revocation. "Such *a* violation" (emphasis added), which pertains to the basis for the requisite issuance of a pre-term-expiration warrant, refers to, or references, *any*

> an actual suspension of the running of the period of supervised release, and under § 3583(i) there is no suspension, but rather an extension of the period during which the government may pursue violations of supervised release.

*Ossa-Gallegos* at 543 n.5 (6th Cir. 2007).

11

> violation of a condition of supervised release during the term, *not* just the one on which revocation is ultimately based.

*Naranjo*, 259 F.3d at 382 (emphasis in original).

The Court finds the analysis advanced in *Naranjo* persuasive and adopts it here. Under the plain language of § 3583(i), there is no limit on the violations which the Court may consider in a post-expiration revocation proceeding, provided that proceeding is otherwise proper under § 3583(i), or any other applicable law or Criminal Rule. Further, this conclusion comports with the First Circuit's reasoning in *Hernandez-Ferrer* that "as long as a warrant or summons issues before the expiration of the term, an offender who remains a fugitive will still be subject to the court's jurisdiction once located, and his conduct while a fugitive will be considered at sentencing."[3]

Interpreting the relevant statutes in the manner adopted by the First Circuit in *Hernandez-Ferrer* and the Fifth Circuit in *Naranjo* provides a cohesive whole that permits a district court to adjudicate violations which occur during a defendant's natural term of supervised release without resorting to artificial extensions of jurisdiction or guessing games about potential violative conduct. So long as a defendant is the subject of any warrant or summons related to a violation of supervised release, the Court has jurisdiction by statute to examine a defendant's conduct during the natural term of supervision and he or she cannot escape the Court's authority by merely running out the clock. This interpretation avoids an unnecessary burden on the United States Pretrial Services and Probation Office to anticipate an absconding defendant's conduct, while still placing a meaningful requirement on them to communicate to the Court known

---

[3] In *Hernandez-Ferrer,* the defendant's conduct, a drug trafficking violation, occurred outside the natural expiration of that defendant's supervised release term, depriving the district court of jurisdiction to consider the violation. Here, the conduct at issue, Defendant's OVI arrest and separate identity theft offense, occurred during his natural term of supervised release and are therefore proper violations for consideration.

violations so as to preserve the Court's jurisdiction. It further provides defendants with a limit upon the conduct the Court may consider – conduct occurring during the natural period of supervised release.

## CONCLUSION

The Court provided Defendant the opportunity to bet on himself that he could stay clean and avoid revocation of his supervised release. Defendant accepted that offer, but instead of betting on his sobriety, he bet that he could avoid law enforcement for longer than this Court had jurisdiction over his supervised release. Defendant was wrong.

Under the plain language of 18 U.S.C. § 3583(i), the Court has jurisdiction to adjudicate matters arising before the expiration of Defendant's supervised release if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation. Defendant's supervised release was set to expire October 31, 2020. A warrant was issued for Defendant during the term of his supervised release on September 14, 2017, for supervised release violations, and the challenged conduct alleged in the final Superseding Violations Report, i.e., Violations 2 and 3, occurred on December 21, 2019 and August 30, 202, respectively, both prior to expiration of the term of Defendant's supervised release. Accordingly, by statute, the Court has jurisdiction to consider Violations 2 and 3.

The Court **ADOPTS** the Report and Recommendation and **ACCEPTS** the recommended disposition. The Court finds Defendant violated the terms and conditions of his supervised release by using illicit drugs and violating state law.

**IT IS SO ORDERED.**

    /s Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**United States District Judge**

**Dated: March 4, 2024**